# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO NAHUM CIBRIAN MATUTE, | : | |
| | : | |
| *Petitioner,* | : | |
| v. | : | 2:25-cv-07093 |
| | : | |
| J.L. JAMISON, *et al.*, | : | |
| | : | |
| *Respondents.* | : | |

## MEMORANDUM

## I.    INTRODUCTION

"[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Petitioner Pedro Cibrian Matute, a Honduran national, entered the United States in 2005. Pet. at 1-2 (Dkt. 1). He holds an approved I-130 (Petition for Alien Relative) through his U.S. citizen wife and a pending Form I-601A (Application for Provisional Unlawful Presence Waiver). *Id.* On December 9, 2025, Immigration and Customs Enforcement (ICE) detained Petitioner under the Government's repeatedly rejected theory that he was an "alien seeking admission" under the Illegal

Immigration Reform and Immigrant Responsibility Act (IIRIRA) and was thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).[1]  Resp. in Opp'n at 9.

On December 16, 2025, Petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2441.  Pet. at 1.[2]  The Petition asserted that he is not an alien seeking admission, but rather an alien who has been present in the United States since 2005.  His argument followed that this status entitles him to a bond hearing under 8 U.S.C. § 1226(a).  Pet. at 1.  According to Petitioner, his continued detention without bond under Section 1225 violated the Immigration and Nationality Act ("INA") and the Fifth Amendment to the U.S. Constitution. U.S. Const. amend. V.

---

[1]      The Eastern District of Pennsylvania has universally disagreed with the Government's position.  In fact, the Government itself documents its own failures in this regard. *See, e.g.*, *Muzofirov v. Jamison*, No. 25-7371; 2026 WL 126153 (ED. Pa. Jan. 16, 2026) (Scott, J.); *Hussain v. O'Neill*, No. 26-cv-35, 2026 WL 66891 (E.D. Pa. Jan. 8, 2026); *Kobilov v. O'Neill*, No. 26-cv-0058, 2026 WL 73475 (E.D. Pa. Jan. 8, 2026); *Diallo v. Bondi*, No. 25-cv-7421, 2026 WL 36534 (E.D. Pa. Jan. 6, 2026); *Kanaut v. Rose*, No. 25-cv-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Bhatia v. O'Neill*, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025) (Rufe, J.); *Porras v. O'Neill*, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); (Beetlestone, C.J.); *Pereira v. O'Neill*, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025) (Marston, J.); *Conde v. Jamison*, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Suspes v. Rose*, 2025 WL 3492820 (E.D. Pa. Dec. 5, 2025) (Brody, J.); *Nogueira-Mendes v. McShane*, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025) (Slomsky, J.); *Juarez v. O'Neill*, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025) (Henry, J.); *Yilmaz v. Warden of Fed. Det. Ctr. Philadelphia*, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025) (Rufe, J.); *Soumare v. Jamison*, 2025 WL 3461542 (E.D. Pa. Dec. 2, 2025) (Henry, J.); *Flores Obando v. Bondi*, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025) (Brody, J.); *Morocho v. Jamison*, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.); *Diallo v.* O'Neill, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025) (Savage, J.); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia*, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); *Patel v. McShane*, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Ndiaye v. Jamison*, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025) (Sánchez, J.); *Demirel v. Fed. Det. Ctr. Philadelphia*, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); *Kashranov v. Jamison*, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Cantu-Cortes v. O'Neill*, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025) (Kenney, J.).

[2]      On December 23, Petitioner also filed a Motion for Temporary Restraining Order. (Dkt. 4). Petitioner's request for a Temporary Restraining Order is moot based on this Court's grant of habeas relief.

In response, the Government advanced two principal arguments.  First, the Government asserted that the Court should dismiss the petition for lack of jurisdiction per 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g).  Alternatively, the Government argues that if the Court were to reach the merits, it should find that Petitioner is lawfully detained without a bond hearing under Section 1225.  Resp. in Opp'n at 2.  Upon consideration of the filings, this Court, like every other court in the Eastern District of Pennsylvania to engage the issue, agreed with Petitioner and ordered a custody redetermination hearing ("bond hearing") under Section 1226. (Dkt. 10).

At the bond hearing, the Immigration Judge (IJ) held they had no jurisdiction to grant bond per the Laken Riley Act (LRA), Pub. L. No. 119-1 § 2, 139 Stat. 3, 3 (2025).  The IJ applied the LRA retroactively, stating that Petitioner's 2006 shoplifting arrest barred his release.  Joint Stat. Rep. (Dkt. 11).  Based on the Parties' Joint Status Report, this Court scheduled a virtual status conference to discuss the application of the LRA to Petitioner's detention.  During the conference, the Government conceded that the LRA has no retroactive effect.  (Dkt. 14).  By that point, the Government had detained Petitioner for 45 days.

With Petitioner's liberty interest at stake, this Court quickly issued an order for his immediate release and promised to explain its reasoning on Section 1225, Section 1226, and the LRA in the coming days. (Dkt. 16).  This memorandum closes the circle.

Thousands of non-citizens, including Petitioner, have found themselves in the unfortunate but familiar trap of this Section 1225/1226 distinction. This trap is emblematic of what happens when our Constitutional traditions and statutory interpretation come second to gamesmanship. The Government gives Petitioners like Mr. Cibrian Matute a bow, points him at a tree, and instructs him: "You must fire an arrow to hit that trunk." So, Petitioners like Mr. Matute do so. Whether they file an I-130, attend ICE check-ins, apply for asylum—it does not matter. The Government will look at the mark, paint a target to the left of it, and accuse them of missing.

## II.    JURISDICTION

Under § 2241, federal courts have jurisdiction to issue a writ of habeas corpus for a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). The petitioner bears the burden of showing he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). In reviewing a writ for habeas, a court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Regardless of whether Petitioner's presence is "lawful, unlawful, temporary, or permanent," the Due Process Clause applies to all persons in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). Controlling circuit authority instructs that alien non-citizens "seeking discretionary relief are entitled to fundamentally fair removal proceedings." *Calderon-Rosas v. AG United States*, 957 F.3d 378, 386 (3d. Cir. 2020).

4

The Government claims that 8 U.S.C. § 1252(g), (b)(9), and (a) bar this Court's jurisdiction. Resp. in Opp'n at 6. Notwithstanding the heft of the Suspension Clause of the United States Constitution, U.S. Const. art. I, §9, cl. 2, this jurisdictional argument has been properly dispatched by every court in this district in which it has been advanced. *See, e.g.*, *Kashranov*, 2025 WL 3188399, at *3-*4; *Ndiaye*, 2025 WL 3229307, at *2-*3.

### a. Section 1252(g)

8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." *Kashranov*, 2025 WL 3188399 at *3. Although this statute "[funnels] removal-related claims away from district courts," it only "reaches these three specific actions, not everything that arises out of them." *Tazu v. AG United States*, 975 F.3d 292, 296 (3d. Cir. 2020). Here, Petitioner challenges the legality of his detention, *not* the commencement, adjudication, or execution of removal proceedings. *Ndiaye*, 2025 WL 3229307 at *3. Thus, Section 1252(g) does not bar Petitioner's claims.

### b. Section 1252(b)(9)

8 U.S.C. §1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only on judicial review of a final order[.]" *Ndiaye*, 2025 WL 3229307 at *3 (first alteration in original). However, Section

1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary U.S. Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's challenge to his detention "cannot be litigated as part of a challenge to a final order of removal," because by that point, Petitioner will be deported or released. *Ndiaye*, 2025 WL 3229307 at *3. Thus, Section 1252(b)(9) does not bar Petitioner's claims.

### c. Section 1252(a)(2)(B)(ii)

By its terms, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes district court review of decisions made by the Attorney General in their discretion. *Kashranov*, 2025 WL 3188399 at *4. The issue before this Court questions the "extent of the [Government's] authority under the detention statutes, which is not a matter of discretion." *Ndiaye*, 2025 WL 3229307 at *3 (*quoting Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)) (alteration in original) (cleaned up). As the Government's authority to detain Petitioner without a bond hearing is not a matter of the Attorney General's discretion, Section 1252(a)(2)(B)(ii) does not apply. *Kashranov*, 2025 WL 3188399 at *3-4.

### III.   DISCUSSION

First, the Court must determine if Section 1225(b) (mandatory detention without bond) or Section 1226(a) (detention with the opportunity for bond) applies to Petitioner.

### a. Section 1226(a), not Section 1225(b), applies to Petitioner's detention.

Judges in this district, and districts around the country, have extensively examined the issue of whether Section 1225(b) or Section 1226(a) governs detentions of noncitizens present in the U.S. The weight of authority has found the Government's position – that it can wield Section 1225(b) to detain Petitioner without bond because he is "seeking admission" within the meaning of Section 1225 – to be incorrect.[3] The difference between the two provisions is clear: "the Government [may] detain certain aliens *seeking admission* into the country under § 1225(b)(1) and (b)(2)," *or* "the Government [may] detain certain aliens *already in the country* pending the outcome of removal proceedings under § 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Persons already present under § 1226 are generally entitled to a bond hearing. Petitioner has been present in this county since 2005 and thus falls into the latter camp.

Up until July of 2025, the Department of Homeland Security (DHS) agreed with that interpretation of the IIRIRA. *Ibarra*, 2025 WL 3294726, at *6. Decades of agency practice changed when DHS distributed a notice in September of 2025 that they were adopting a policy of mandatory detention "regardless of whether [alien

---

[3]    *See supra*, note 1; *see also Francisco T. v. Bondi*, 797 F. Supp. 3d 970 (D. Minn. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271(D. Mass. 2025); *Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *but see Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *10 (5th Cir. Feb. 6, 2026*) (adopting Government's position that all "applicants for admission" are "seeking admission," regardless of how long they have been in the country).

noncitizens] were stopped at the border or arrested years later inside the country." *Id.* at \*2 (*quoting Soto v. Soto*, No. 25-16200, 2025 WL 2976572, at \*2 (D.N.J. Oct. 22, 2025). The Board of Immigration Appeals ("BIA"), which issues decisions binding on immigration judges, took the same stance shortly after, stripping the authority of immigration courts to grant bond for any person who entered the United States without admission. *In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). Before the BIA's decision, "*millions* of noncitizens had been informed that they could participate in removal proceedings, which can take months or years, out of custody, so long as they could establish they were neither a flight risk nor danger to the community." *E.C. v. Noem*, No. 25-cv-01789, 2025 WL 2916264, at \*1 (D. Nev. Oct. 14, 2025).

The Government's pre-2025 interpretation was correct.[4] Applying Section 1225(b) to Petitioner would flout the plain meaning of its text. Seeking admission under Section 1225(b) means to be actively seeking entry, which "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929). The phrase "conveys ongoing and continuous action, rather than a completed or static state." *Kashranov*, 2025 WL 3188399 at \*6. Thus, Petitioner could not be considered as "seeking admission" when he has been present in the U.S. for

---

[4] "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *See Ndiaye*, 2025 WL 3229307, at \*7 (*quoting Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)).

twenty-one years. Nor can this Court ignore the words Congress has written. *See Demirel*, 2025 WL 3218243, at *4 ("If, as the Government argues, § 1225(b) applies to all 'applicants for admission,' then there was no need for Congress to limit the statute's application to 'aliens seeking admission.' I am not prepared to read this part of § 1225(b) out of existence. Yet, that is what the Government asks me to do.").

Furthermore, the structure of Section 1225 precludes Respondents' interpretation. As Judge Wolson aptly described, the Section 1225(b) is situated in text describing the "[t]reatment of aliens arriving from contiguous territory," and aliens who are "arriving on land," as a "stowaway," or a "crewman." *Krashanov*, 2025 WL 3188399 at *7 (alteration in original) (citing 8 U.S.C. §§ 1225(b)(2), (2)(C)). These provisions, taken together, support the interpretation that Section 1225 contemplates encounters at the border or port-of-entry, rather than encounters with resident noncitizens. *Aqib Hussain*, 2026 WL 66891, at *5 (citing *Krashanov, supra*).

Not only would Respondent's interpretation render the textual and structural distinctions between Section 1225 and Section 1226 meaningless, it would moot the LRA's addition to the statutory scheme. The LRA added new categories of alien noncitizens subject to mandatory detention in Section 1226(c) based on their criminal arrests, admissions, charges, or convictions. "But if Respondents' interpretation of section 1225 was correct, then there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section [Section 1225]." *Francisco T. v. Bondi*, 797 F. Supp. 3d 970, 975 (D. Minn.

9

2025); *see also Ndiaye*, 2025 WL 3229307, at \*7 (*citing Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 713 (2025)).  Accordingly, Petitioner's detention is properly governed by Section 1226 and thus he is entitled to a bond hearing.

### b. The Laken Riley Act does not apply to Petitioner's 2006 shoplifting arrest.

The LRA, signed into law on January 29, 2025, mandates the detention, without bond, of noncitizens who are charged, arrested, convicted, or admit to committing "acts which constitute the essential elements of any burglary, theft, larceny, shoplifting," among other crimes. 8 U.S.C. § 1226(c)(1)(E). Detention must occur "*when* the alien is released" from criminal custody on the underlying offense, regardless if they are released on "parole, supervised release, or probation." 8 U.S.C. § 1226(c)(1) (emphasis added).

The "release and re-detain" provision predates the LRA's amendments to Section 1226 of the IIRIRA, where it formerly applied only to alien noncitizens convicted of a specified set of crimes, not merely arrests. *Demore v. Hyung Joon Kim*, 538 U.S. 510, 513 (2003) (discussing the policy of detaining criminal alien noncitizens pending removal proceedings). Thus, under the LRA, "if a noncitizen entered the country illegally and was subsequently convicted or charged," or arrested for, "certain crimes, the noncitizen must be detained without a bond hearing while their removal proceedings are pending." *Ndiaye*, 2025 WL 3229307, at \*6.

This Court finds (and the Government agrees) that the text of the LRA does not evince any intent on the part of Congress for its retroactive application.  The

record filings reveal that Petitioner was arrested some nineteen years before the LRA's passage. Thus, his prior shoplifting arrest cannot justify denying him bond under its provisions. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001) ("A statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result.").

At Petitioner's bond hearing, the Immigration Judge applied the LRA retroactively. Third Circuit authority cautions that statutory retroactivity should be approached with skepticism, for its application can run contrary to "elementary considerations of fairness." *Francisco-Lopez v. AG United States*, 970 F.3d 431, 436 (3d. Cir. 2020) (quoting *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 269-70 (1994)). In *Landgraf*, the Supreme Court set forth a two-step test for determining if a statute applies retroactively to past conduct. At the outset, the court must use our normal rules of construction to determine if Congress has expressly prescribed the statute's temporal reach. *Guzman v. AG United States*, 770 F.3d 1077, 1083-1084 (3d. Cir. 2014) (*quoting Landgraf*, 511 U.S. 269-70 (1994)); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 38 (2006). The standard for determining if a law applies retroactively is "a demanding one." *Ward v. Dixie Nat. Life Ins. Co*, 595 F.3d at 173 (4th Cir. 2010) (*quoting St. Cyr*, 533 U.S. at 316). "A statute is not given retroactive effect unless . . . required by [its] explicit language or by necessary implication." *Fernandez-Vargas*, 548 U.S. at 33 (cleaned up). Verb tense is a powerful indicator of a statute's temporal reach. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").

There is no express command in the text of the LRA that it should apply to past conduct. Its language is forward looking. The LRA applies to a person who, among other things, "is charged with" or "is arrested for" a theft-related offense. 8 U.S.C. § 1226(c)(1)(E)(iii). The word "is" indicates the present-tense, third person singular form of the verb "to be." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/is (last visited Jan. 31, 2026). The LRA's use of the present tense means it cannot include "a person [who] has previously been arrested for and charged with a crime where they have also been acquitted of the crime." *E.C.*, 2025 WL 2916264, at *11.  Nor can it mean someone who was arrested years ago, even if that arrest never manifested in indictment, because "the present tense generally does not include the past." *See Carr v. United States*, 560 U.S. 438, 448 (2010). Accordingly, the present-tense "is arrested" in the LRA cannot apply to Petitioner's 2006 arrest.[5]

Furthermore, a retroactive application would render the language that the Attorney General "shall take the alien into custody . . . when the alien is released" superfluous. *Grant v. Zemski*, 54 F. Supp. 2d 437, 443 (E.D. Pa. 1999); 8 U.S.C. § 1226(c)(1). The plain meaning of "when an alien is released" cannot be stretched to mean "*anytime* after the alien is released" without violating our rules against surplusage, especially where that release occurred in the past. *Grant*, 54 F. Supp. 2d

---

[5]     There is no evidence that Petitioner was ever convicted of any crime. The conduct improperly considered by the IJ in the retroactive application was a 19-year-old shoplifting arrest.

at 443. Even before the passage of the LRA, courts understood the "release and re-detain" policy to impose an immediacy requirement. *See Grant*, 54 F. Supp. 2d at 444 (holding that Congress did not intend for 8 U.S.C. § 1226(e) to apply retroactively); *Oscar v. Gillen*, 595 F. Supp. 2d 166, 169 (D. Mass. 2009) (same); *Pastor-Camarena*, 977 F. Supp. at 1417 (W.D. Wash. 1997) (holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier). "When released" certainly cannot extend to a period of years, or to past conduct. Without the immediacy requirement for the "release and re-detain" policy fulfilled, there is no basis for denying Petitioner bond under the LRA.

Although the Court need not continue the inquiry, retroactive application of the LRA would still fail step two of the *Landgraf* test. In absence of express command from Congress, courts decide if a statute is impermissibly retroactive by asking whether it "takes away or impairs vested rights acquired under existing laws," or "attaches new legal consequences to events before enactment." *Guzman*, 770 F.3d at 1083-1084 (*quoting Landgraf*, 511 U.S. 244, 269-70) (cleaned up).

The Supreme Court has rejected retroactive legislation attaching adverse consequences to past crimes in the immigration context. In *Vartelas v. Holder*, the Court struck down an impermissibly retroactive application of a 1996 amendment to the IIRIRA, which required Lawful Permanent Residents (LPRs) with convictions for crimes of "moral turpitude" be subject to admission proceedings upon re-entry to the

United States. 566 U.S. 257, 262 (2012). *Vartelas* addressed an LPR who was denied re-entry to the United States because of criminal convictions pre-dating the 1996 amendment. *Id.* The Court held that because the IIRIRA attached a new disability (barrier of re-entry) to the petitioner based on a "single crime committed years before IIRIRA's enactment," retroactive application was impermissible. *Id.* at 272. *Vartelas* holds true here. Attaching a new disability (mandatory detention) to an arrest predating the LRA would be impermissibly retroactive.

In sum, the LRA is not a retroactive statute. Treating it as such would fail both steps of the *Landgraf* test based on the LRA's plain language, statutory context, and attachment of disabilities to past conduct.

## IV.    CONCLUSION

The target was moved twice to attempt to justify Petitioner's illegal detention—first, when Respondents tried to detain him under Section 1225, and second, when the Immigration Judge retroactively applied the LRA. But our Constitution is not so indeterminate that it can be painted to Government's liking.[6] Because a habeas court has "the power to order the conditional release of an

---

[6]     As a final observation – the Government's reading of the IIRIRA would enable the *indefinite* "[detention] of *millions* of noncitizens in the interior, some of them present for decades, on the same terms as if they were apprehended at the border." *Buenrostro-Mendez*, 2026 WL 323330, at *10 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting) (emphasis added). This Court harbors not only Fifth Amendment due process concerns but is also wary of the Eighth Amendment's prohibition on excessive bail, fines, and cruel and unusual punishments. This indefiniteness seems profoundly inconsistent with our Constitutional traditions, supplying yet another reason to reject the Government's interpretation.

individual unlawfully detained," this Court ordered the immediate release of

Petitioner. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

BY THE COURT:

GAIL A. WEILHEIMER,  J.

DATE:  February 18, 2026